**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**MINNEAPOLIS DIVISION**

| | | |
|---|---|---|
| AUTO-REC. BODYWORKS, INC.; HRE LLC; and HELLMUTH & JOHNSON, PLLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION FILE NO.: |
| vs. | ) ) | |
| JOHN DOE 1; and JOHN DOE 2, | ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

COME NOW the Plaintiffs, AUTO-REC. BODYWORKS, INC., HRE LLC, and HELLMUTH & JOHNSON, PLLC, and hereby submit this Complaint, showing the Court as follows:

PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff AUTO-REC. BODYWORKS, Inc. ("ARB") is a domestic corporation with its principal place of business located in Sherburne County, Minnesota.

2.    Plaintiff HRE LLC ("HRE") is a domestic limited liability company with its principal place of business located in Sherburne County, Minnesota.

3.

Plaintiff HELLMUTH & JOHNSON, PLLC ("Hellmuth Johnson"), is a domestic limited liability company with its principal place of business located in Hennepin County, Minnesota.

4.

Defendant John Doe 1 is a citizen of another state or country, who has committed tortious acts within the State of Minnesota, has transacted business within the State of Minnesota, and has committed acts that have caused injury within the State of Minnesota.

5.

Defendant John Doe 2 is a citizen of another state or country, who has committed tortious acts within the State of Minnesota, has transacted business within the State of Minnesota, and has committed acts that have caused injury within the State of Minnesota.

6.

Defendants John Doe 1 and 2 directed and committed fraudulent activities that targeted a closing of an asset purchase from ARB (the "Closing") in Minnesota and a Minnesota-based law firm, using emails sent to recipients located in Minnesota by which they intended to and did divert funds from the Closing to recipients not associated with the Closing; masking themselves as a sender located in Minnesota

who owned a business in Minnesota to send fraudulent emails; and using multiple bank accounts and digital currency to receive and transfer funds fraudulently diverted from the Closing.

7.

John Doe 1 is the owner of a bank account located at Bank of New York Mellon bearing account number xxxxxx7952 (the "BNYM Account"), an account that was not affiliated with any party to the Closing but that fraudulently received funds from the Closing intended for HRE.

8.

John Doe 2 is the person who directed John Doe 1 to receive and divert funds from the Closing to unknown third parties, including parties located in the United States and overseas.

9.

Jurisdiction is proper in Minnesota state courts pursuant to the Minnesota Long-Arm Statute, as Defendants "transact[] business within the state," "commit[ted] … act[] in Minnesota causing injury or property damage," or, alternatively, "commit[ted] … act[s] outside Minnesota causing injury or property damage in Minnesota…" Minn. Stat. § 543.19, subd. 1(2), (3), and (4).

10.

The fraud Defendants committed was as to the Closing located in Minnesota; was related to a Minnesota business; and was directed at a Minnesota law firm and Minnesota business, such that Minnesota has a substantial interest in providing a forum. The exercise of jurisdiction by this Court over Defendants and banks and other persons and entities acting in concert with Defendants would not violate fairness and substantial justice.

11.

Jurisdiction is also proper in Minnesota federal courts pursuant to 28 U.S.C. § 1331 (federal question under RICO) and, alternatively, § 1332 (diversity of citizenship, as the amount in controversy exceeds $75,000 and, upon information and belief, the Defendants are citizens of states other than Minnesota).

12.

Venue is proper in the courts located in and covering Hennepin County and Sherburne County, Minnesota, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to the claim occurred in Hennepin County and Sherburne County, Minnesota, located within the Northern District of Minnesota, Minneapolis Division. Specifically, a Minnesota closing relating to sale of a Minnesota business was targeted by a fraudulent enterprise, of which Defendants are a part. *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (venue proper

where it had substantial connection to plaintiff's claims); *National Egg Co. v. Bank Leumi Ie-Isreal*, B.M., 514 F. Supp. 1125, 1127-28 (N.D. Ga. 1981) (venue proper where activities targeted parties in the forum state).

<u>FACTUAL BACKGROUND</u>

13.

At all times relevant to this Complaint, Plaintiff ARB operated an automobile body repair business located in Sherburne County.

14.

At all times relevant to this Complaint, Plaintiff HRE was owned by Rick Haugland, who also was the principal of ARB.

15.

At all times relevant to this Complaint, Hellmuth & Johnson is and was a law firm that handles transactional closings, including asset purchases such as the one involved in this case.

16.

In November and December 2023, Hellmuth & Johnson assisted ARB with its sale of certain assets (the "Sale") to Gerber Collision (Midwest), Inc. ("Gerber").

17.

In connection with the Sale, Rick Haugland, communicated with ARB's counsel in the transaction, Hellmuth & Johnson, through his email account, myautobodyman@hotmail.com.

18.

On November 30, 2023, an email that appeared to come from Mr. Haugland's email account, mybodyman@hotmail.com, was sent by John Doe 1, John Doe 2, or one or more of their co-conspirators, to Hellmuth & Johnson directing that the buyer in the Sale wire or ACH funds to The Bank of New York Mellon account number xxxxxx7952 (the "BNYM Account"), with the intent to fraudulently divert funds from the Sale to the BNYM Account.

19.

The BNYM Account was not affiliated with any party to the Sale, nor did it belong to the intended beneficiary of funds for the Sale, HRE.

20.

The owner of the BNYM Account is unknown, but upon information and belief, is a person recruited by a fraudulent enterprise for the purpose of moving funds beyond the reach of the parties to the Sale and Court process.

21.

On December 1, 2023, the closing on the Sale (the "Closing") occurred. On or about December 1, 2023, Gerber, the buyer, wired $450,000 or sent these funds by ACH (the "Wire Transfer") as part of completion of the Sale, intending to transmit the funds to the account specified by ARB, which should have been an account controlled by HRE.

22.

Because of the fraudulent wire/ACH instructions supplied by John Doe 1, John Doe 2, or their co-conspirators, the funds were transferred by Gerber into the BNYM Account, which is owned by John Doe 1, a person not affiliated with the Closing, the Sale, or any parties to the Closing or the Sale.

23.

John Doe 1 is an individual or business whose name is unknown, but who owns the BNYM Account, which was the recipient of the Wire Transfer sent by Plaintiff who either acted with knowledge of the fraudulent nature of the fraud upon the parties to the Closing or with reckless indifference to the improper things John Doe 1 was doing or being asked to do as an instrumentality of the fraudulent scheme.

24.

Upon information and belief, John Doe 2 is an individual or business whose name is unknown, but who directed the fraudulent scheme alleged herein, including

but not limited to: (1) directing that John Doe 1 set up the BNYM Account and receive the Wire Transfer for fraudulent purposes; (2) planning and engaging in the fraud that preceded the Wire Transfer; and (3) receiving, negotiating, or disposing of the funds from the Wire Transfer.

25.

Declarations of Darbie Tamsett and Rick Haugland are attached as Exhibits 1 and 2, along with true and correct copies of the fraudulent email wire instructions and confirmation of Gerber's sending of the Wire Transfer.

26.

Plaintiffs seek the aid of the Court and the Court's laws and rules to discover the identity of the persons or businesses who own the BNYM Account and who engaged in the fraudulent email wire instructions, assertion of dominion over funds from the Sale and Closing, and diversion of the funds into the BNYM Account (the "Fraudulent Transactions").

27.

In reliance on Defendants' instructions, Gerber completed the Wire Transfer of $450,000 to the BNYM Account on December 1, 2023.

28.

Upon information and belief, Defendant John Doe 1 and/or Defendant John Doe 2 accessed, used, transferred, converted, withdrew, and stole the funds that Gerber transferred to the BNYM Account.

<u>FIRST CLAIM FOR RELIEF – CIVIL RICO</u>

29.

Plaintiffs hereby incorporate the preceding paragraphs of their Complaint by reference.

30.

Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to the provisions of 18 U.S.C. § 1961, *et seq.*

31.

John Doe 1, John Doe 2, and their co-conspirators engaged in conduct of an enterprise through a pattern of racketeering activity that included interstate mail fraud, interstate wire fraud, and money laundering, including but not limited to violations of 18 U.S.C. §§ 1956(a)(2)(A) (money laundering), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), including but not limited to the use of wire transfers or ACH transfers to divert and hide fraudulently obtained funds, the use of the mails to mail cashier's checks to other participants in the scheme alleged herein, the use of Bitcoin and other digital assets to abscond with HRE's funds, and

conducting financial transactions with proceeds of unlawful activity. Upon information and belief, Defendants John Doe 1, John Doe 2, and their co-conspirators knew that the funds were proceeds of unlawful activities at the time they transferred and converted the funds.

32.

ARB and HRE have suffered damages in excess of $450,000, which damages were proximately caused by Defendants' RICO violations and Plaintiffs are entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c), for which Defendants John Doe 1 and John Doe 2 should be liable to Plaintiff. Hellmuth & Johnson has also suffered damages from Defendants' conduct, in that it was the intended recipient of the Wire Transfer instruction from Defendants and who relied upon the wiring instructions provided by John Doe 1 and John Doe 2 to its detriment in drafting the Closing documents.

33.

The transactions by Defendants alleged herein were part of a pattern of racketeering activity, including but not limited to transfers of other stolen funds received by, contained in, and transferred from the BNYM Account and other accounts used in the scheme, along with funds from other, similar fraudulent schemes targeting other persons and entities in Minnesota and other States and countries.

34.

Upon information and belief, John Doe 1 and John Doe 2's transactions alleged herein were not isolated in light of the complex nature of the scheme to hack email accounts, intercept communications, and fraudulently direct and divert funds to the BNYM Account.

35.

Defendants engaged in secrecy, disguising and hiding their true identities from the parties to the Sale, posing as Mr. Haugland, and directing funds from the Wire Transfer to the BNYM Account using this false identity. This secrecy demonstrates intentional conduct by Defendants. See, e.g., *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1402 (11th Cir. 1994).

36.

Defendants went to great lengths to hide their scheme from Plaintiffs, including hiding their identities, supplying false Wire Transfer instructions, and soliciting participants to accomplish the ends of the scheme.

37.

Plaintiffs have suffered damages in excess of $450,000, which damages were proximately caused by Defendants' RICO violations, and are entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c), for which Defendants are liable to Plaintiffs.

SECOND CLAIM FOR RELIEF – MONEY HAD AND RECEIVED

38.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

39.

Defendant John Doe 1 and/or Defendant John Doe 2 directed funds from the Sale to be transferred into the BNYM Account for the benefit of Defendant John Doe 1 and John Doe 2.  These funds constitute money which Defendants John Doe and John Doe 2 are not entitled in good conscience to retain and which in equity and good conscience, they should pay to Plaintiffs.

40.

Defendants John Doe 1 and John Doe 2 have the obligation in equity and good conscience to repay the funds that were transferred by the Wire Transfer to the BNYM Account, which funds were wired into said account as the result of fraud.

41.

Defendants John Doe 1 and John Doe 2 have caused damage to Plaintiff by engaging in the Fraudulent Transactions and directing funds from the Sale and the Closing to the BNYM Account, for which they should be liable in damages and for injunctive relief ordering that they and all persons acting in concert with them cease all transfers or negotiation of the funds and return the funds to Plaintiffs.

<u>THIRD CLAIM FOR RELIEF – FRAUD</u>

42.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

43.

Defendants John Doe 1 and John Doe 2 obtained funds intended for Plaintiff HRE through a fraudulent scheme as alleged above. Defendants John Doe 1 and John Doe 2 either committed these acts themselves or acted through agents over whom they controlled the time, manner, method and means of committing the fraud, or with a co-conspirator, for the purpose of transferring the funds into the BNYM Account.

44.

Defendants John Doe 1 and John Doe 2 knew they did not own the funds from the Sale and Closing and they provided fraudulent documents for the purpose of fraudulently obtaining the funds from the Sale and the Closing.

45.

Defendants John Doe 1 and John Doe 2 intended that Plaintiff Hellmuth & Johnson, as counsel for ARB, rely on their misrepresentations as to their identity and the affiliation of the BNYM Account with the Sale and the Closing.

46.

Plaintiff Hellmuth & Johnson did, in fact, foreseeably rely on the aforesaid misrepresentations by Defendants.

47.

The actions of Defendants John Doe 1 and John Doe 2 constitute fraud for which Plaintiffs are entitled to recover damages from Defendants John Doe 1 and John Doe 2.

48.

Defendants John Doe 1 and John Doe 2 committed fraud, for which they should be liable in damages and for injunctive relief ordering that they and all persons acting in concert with them cease all transfers or negotiation of the funds and return the funds to Plaintiffs.

## FOURTH CLAIM FOR RELIEF – CIVIL CONSPIRACY

49.

Plaintiff hereby incorporates the preceding paragraphs of this Complaint by reference.

50.

Upon information and belief, Defendants John Doe 1 and John Doe 2 conspired and agreed with each other and with one or more other persons and entities to commit the fraudulent acts set forth herein.

51.

As set forth above, Defendants John Doe 1, John Doe 2, and their co-conspirators acted pursuant to a common intent and design with other individuals and/or entities to fraudulently move, through a series of transactions, funds intended for the Sale and the Closing to the BNYM Account.

52.

Plaintiffs were damaged by the aforesaid conspiracy, for which Defendants John Doe 1 and John Doe 2 are liable in damages.

FIFTH CLAIM FOR RELIEF
UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

53.

Plaintiff hereby incorporates the preceding paragraph of this Complaint by reference.

54.

As set forth above, Defendants John Doe 1 and John Doe 2 fraudulently obtained funds rightfully belonging to Plaintiff through a series of acts that ultimately caused Gerber, the buyer in the Sale, to transfer $450,000 intended for HRE into the BNYM Account.

55.

Defendants John Doe 1 and John Doe 2 and their co-conspirators should not be allowed to enjoy the beneficial interest or ownership of the funds fraudulently transferred without violating established principles of equity.

56.

A constructive trust should be imposed on all funds traceable to the Wire Transfer to the BNYM Account to prevent unjust enrichment of John Doe 1 and John Doe 2.

SIXTH CLAIM FOR RELIEF – INJUNCTIVE RELIEF

57.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

58.

As set forth above, there is a substantial likelihood that Plaintiffs will prevail on the merits of its claims. If this injunction is not granted, Plaintiffs stand to suffer irreparable injury, loss and damage if Defendants or their co-conspirators further negotiate from the BNYM Account or use proceeds from the stolen funds in the BNYM Account. In light of the fraudulent activity which resulted in money entering into the recipient accounts, including but not limited to the BNYM Account, Defendants are likely to dispose of Plaintiff's property and funds if the relief

requested herein is not granted. The threatened injury to Plaintiffs outweighs the threatened harm the injunction may do to Defendants. Granting an injunction will not disserve the public interest in that there is no public interest in recipients of fraudulent transfers retaining such funds.

59.

An injunction, including but not limited to an asset freeze and a freeze on the BNYM Account, is warranted and should be issued on a temporary and permanent basis pursuant to Federal Rule of Civil Procedure 65. The injunction should restrain Defendants, all persons acting in concert with or in participation with any of them, their officers, directors, agents, representatives, successors, assigns, any banks, savings and loan associations, credit card companies, credit card processing agencies, merchant acquiring banks, financial institutions, or other companies that engage in the processing or transferring of money and/or real or personal property, who receive actual notice of the Court's Order by personal service or otherwise from, without prior approval of the Court, transferring, disposing of, or secreting any money or proceeds of money from Defendants and any other assets of Defendants from accounts associated with or utilized by any of the Defendants, or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendants, into or out of any accounts associated with or utilized by any of the Defendants, regardless of whether such accounts are located in the

United States or abroad, including but not limited to the BNYM Account. This Order should include but not be limited to any and all accounts and assets utilized or owned by Defendants John Doe 1 and John Doe 2.

SEVENTH CLAIM FOR RELIEF – PUNITIVE DAMAGES

60.

Plaintiff hereby incorporates the preceding paragraphs of this Complaint by reference.

61.

Upon information and belief, the actions of Defendants John Doe 1 and John Doe 2 acted intentionally; deliberately disregarded the rights of others with knowledge of the facts or intentional disregard of the facts creating a high probability and high degree of probability of injury to the rights of others; authorized the aforesaid acts; and ratified and approved the acts of others involved in the conspiracy to obtain the Sale proceeds. Accordingly, Plaintiffs are entitled to recover punitive damages from Defendants John Doe 1 and John Doe 2 under Minn. Stat. § 549.20, subd. 1 and 2.

WHEREFORE, Plaintiffs pray for the following relief:

1) That process issue in accordance with the law;

2) That Plaintiffs have a judgment for injunctive relief and disgorgement of funds wrongfully taken, received, and misappropriated by Defendants, including but not limited imposing an asset freeze on assets of Defendants, Defendants' accounts, including but not limited to the BNYM Account, and all other accounts which received the fraudulently transferred funds set forth herein;

3) That Plaintiffs be awarded compensatory, nominal, treble, and general damages against Defendants John Doe 1 and John Doe 2;

4) That Plaintiffs be awarded punitive damages against Defendants John Doe 1 and John Doe 2;

5) That Plaintiffs be awarded all costs of this action and attorneys' fees against Defendants John Doe 1 and John Doe 2; and

6) That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted, this, the 22nd day of April, 2024.

GUSTAFSON GLUEK PLLC

By:   */s/ Daniel J. Nordin*
Daniel E. Gustafson (#202241)
Daniel J. Nordin (#392393)
Mary M. Nikolai (#400354)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dnordin@gustafsongluek.com
mnikolai@gustafsongluek.com

Jason Gustafson (#0403297)
THRONDSET MICHENFELDER, LLC
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Telephone: (763) 515-6110
jason@throndsetlaw.com

***Counsel for Auto-Rec Bodyworks, Inc. and HRE LLC***

HELLMUTH & JOHNSON, PLLC

By:   */s/ J. Robert Keena*
      J. Robert Keena, MN ID #258817
      8050 West 78th Street
      Edina, Minnesota 55439
      Telephone: 952-941-4005
      Email: jkeena@hjlawfirm.com
      *(Pro Hac Vice Application Pending)*

      **Attorneys for Plaintiff**
      **Hellmuth & Johnson, PLLC**

COPELAND, STAIR, VALZ & LOVELL, LLP

By:   */s/Mark D. Lefkow*
      Mark D. Lefkow
      Georgia Bar No. 004289
      191 Peachtree Street, N.E.
      Suite 3600
      Atlanta, Georgia 30303
      Phone: (404) 522-8220
      Fax: (404) 523-2345
      Email: mlefkow@csvl.law
      *(Pro Hac Vice Application Pending)*

      **Attorneys for Plaintiff**
      **Hellmuth & Johnson, PLLC**