IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | |
|---|---|
| AUTO-REC. BODYWORKS, INC.; HRE LLC; and HELLMUTH & JOHNSON, PLLC, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN DOE 1; and JOHN DOE 2, <br><br> Defendants. | CIVIL ACTION FILE NO.: |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COME NOW the Plaintiffs, AUTO-REC. BODYWORKS, INC., HRE LLC, and HELLMUTH & JOHNSON, PLLC, and show as follows in support of their Motion for *ex Parte* Temporary Restraining Order and Preliminary Injunction:

**STATEMENT OF FACTS**

Plaintiff Auto-Rec. Bodyworks, LLC ("ARB"), operated an automobile body repair business located in Sherburne County. (Haugland Decl., Ex. 1.) Hellmuth & Johnson is a law firm with its principal place of business in Hennepin County, Minnesota. (Tamsett Decl. Ex. 2.)

In November and December 2023, Hellmuth & Johnson assisted ARB with its sale of certain assets (the "Sale") to Gerber Collision (Midwest), Inc. ("Gerber").

9076156v.1

(Ex.'s 1 and 2.) In connection with the Sale, ARB and HRE's principal, Rick Haugland, communicated with Hellmuth & Johnson through his email account, myautobodyman@hotmail.com. (Haugland Decl., Ex. 1.)

On November 30, 2023, an email (the "Fraudulent Wire Instructions") that appeared to come from Mr. Haugland's email account, at mybodyman@hotmail.com, was received by Hellmuth & Johnson directing that the buyer in the Sale wire or ACH funds to The Bank of New York Mellon account number xxxxxx7952 (the "BNYM Account"). (Tamsett Decl., Ex. 2; Email, Ex. 2-A.) The Sale closing ("Closing") took place on December 1, 2023. Pursuant to these wire instructions, Gerber wired $450,000 to the BNYM Account for the Sale on or about December 1, 2023. (Tamsett Decl., Ex. 2; Wire Confirmation, Ex. 2-B.)

The BNYM Account did not belong to the intended beneficiary of funds for the Sale, HRE. (Haugland Decl., Ex. 1.) Mr. Haugland did not authorize or direct that the Sale proceeds be sent to the BNYM Account, and the Fraudulent Wire Instructions were false. (Haugland Decl., Ex. 1.)

As a result, HRE and ARB did not receive the Sale proceeds as provided in the Closing documents. (Haugland Decl., Ex. 1.) The parties do not know the identity of the owner of the BNYM Account. Plaintiffs have filed claims for violations of the

9076156v.1

Racketeer Influenced Corrupt Organizations Act ("RICO"), for fraud, for money had and received, for civil conspiracy, and for permanent injunctive relief.

As to the need for *ex parte* nature of the relief Plaintiffs seek, the Declaration of Mark Lefkow, counsel for Hellmuth & Johnson, is submitted as Exhibit 3 hereto. As set forth in that declaration, in light of the complex nature of the scheme involved, giving prior notice of the TRO to Defendant or banks holding funds from the fraud will result in the funds going beyond the reach of the parties and Court process.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

1.

Plaintiffs stand to suffer immediate and irreparable injury, loss, and damage if Defendants or their co-conspirators withdraw from the BNYM Account or any of the financial institutions where Defendants may have deposited or transferred funds fraudulently obtained from the Closing and Sale or proceeds thereof. In light of the fraudulent activity which resulted in $450,000 intended for ARB as Sale proceeds being transferred into the BNYM Account, it is likely that Defendants and their co-conspirators will dispose of the funds and bring the funds beyond the reach of the Court if the relief requested herein is not granted on an *ex parte* basis.

9076156v.1

2.

Plaintiffs have met the prerequisites for issuance of a temporary restraining order and preliminary injunction. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) ("Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."); *Heartland Academy Community Church v. Waddle*, 335 F.3d 684 (8th Cir. 2003) (same).

3.

The declarations of Rick Haugland and Darbie Tamsett, filed herewith, show that Plaintiffs' claims under RICO, and claims for fraud, unjust enrichment, constructive trust, and civil conspiracy have a substantial likelihood of success on the merits under federal law and Minnesota law.

   a. <u>Civil RICO</u>: 18 U.S.C. § 1961, *et seq.* (civil RICO); 18 U.S.C. § 1962(c) (RICO renders it unlawful for any person to directly or indirectly engage in conduct of an enterprise through a pattern of racketeering activity); 18 U.S.C. § 1964(c) (private right of action for persons injured by RICO violations); 18 U.S.C. § 1961(1) (wire fraud, mail

fraud, and money laundering are predicate acts under RICO); 18 U.S.C. § 1956(a)(2)(A) (money laundering), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud).

b. Fraud: *U.S. Bank N.A. v. Cold Spring Granite Co.,* 802 N.W.2d 363, 373 (Minn. 2011) (fraud requires proof of "(1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance").

c. Unjust enrichment: *Zinter v. Univ. of Minnesota*, 799 N.W.2d 243, 246 (Minn. Ct. App. 2011) ("Unjust enrichment requires that: (1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; (3) the defendant retain the benefit although retaining it without payment is inequitable.").

d. Constructive Trust: *Danielson v. Danielson*, 721 N.W.2d 335, 339 (Minn. Ct. App. 2006) (a constructive trust is a "judicially created equitable remedy imposed to prevent unjust enrichment of a person

9076156v.1

       holding property under a duty to convey it or use it for a specific purpose.").

   e. <u>Civil Conspiracy:</u> *Harding v. Ohio Cas. Ins. Co.,* 41 N.W.2d 818, 824 (Minn. 1950) ("To establish civil conspiracy, a claimant must show that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means.").

4.

Plaintiffs stand to suffer immediate and irreparable injury absent an injunction. The funds that are the subject of the fraudulent transaction must be returned to the parties who own and who are owed the funds, including ARB. Absent an immediate injunction, the nature of the fraudulent actions set forth above show that the person or persons who perpetrated the fraud acted in coordination with each other to intercept and abscond with the funds. This suggests that, if an injunction is not entered *ex parte* with an opportunity to appear at a hearing on conversion of the injunction to a preliminary injunction, these actors will complete their plan to abscond with the funds. (Lefkow Decl., Ex. 3.)

5.

The potential injury to the accountholder of the BNYM Account is minimal or non-existent, as the account holder has no connection to the subject transaction and, therefore, no right to hold the sums transmitted by the Wire Transfer.

6.

As to the scope of the injunction Plaintiffs seek, Plaintiffs submit that all funds in the BNYM Account should be frozen, because accounts which are the tools of such frauds often hold proceeds of a series of fraudulent activities. Additionally, because money mules often move funds around to different accounts to avoid wire reversals from sending banks and law enforcement actions, all funds in accounts held in the name of the accountholder of the BNYM Account should be frozen. (Lefkow Decl., Ex. 3, ¶ 5.)

7.

Absent this relief, based on the fraudulent nature of the scheme using interception of email communications, hacking of emails, fraudulent representations as to identity, use of a money mule account, and diversion of Closing funds, Plaintiffs submit that the funds they seek and the funds of Defendants *will*, not just *might*, be brought beyond the jurisdiction of this Court. (Lefkow Decl, Ex. 3, ¶ 5.)

Laundering the funds and bringing them beyond the reach of court process are acts consistent with the nature and purpose of such schemes. (Id.)

8.

The only effective relief is an asset freeze that preserves the status quo, freezes all assets of Defendant John Doe 1 wheresoever they may be found, and allows Defendants the opportunity to contest the relief once Plaintiffs obtain information regarding the identity of the accountholder and what funds remain from this fraudulent scheme.

9.

An asset freeze on all proceeds and funds derived from the BNYM Account after December 1, 2023, is proper, in that Defendants and their co-conspirators are running a criminal enterprise that stole $450,000 by fraudulently intercepting emails between parties to a transaction and diverting wired funds to a bank account having no connection with the transaction for which the funds were intended. 18 U.S.C. § 1964(a) allows for equitable relief for RICO violations, providing that:

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate

8

or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

10.

A remedy under Minnesota law for unjust enrichment is imposition of a constructive trust. *Danielson v. Danielson*, 721 N.W.2d at 339.

11.

Valid claims for constructive trust and equitable remedies under RICO allow the Court to "freeze a defendant's assets to ensure the adequacy of a disgorgement remedy." *Commodity Futures Trading Comm. v. Levy*, 541 F.3d 1102, 1114 (11th Cir. 2008); *W. Heritage Ins. Co. v. RDS Grp., Inc.*, 2010 WL 11565287, at *4 (S.D. Iowa June 22, 2010) ("Although an extreme remedy, a district court may freeze assets in order to preserve the *status quo* if there is a sufficiently close nexus between the relief sought and the assets sought to be frozen.").

12.

An injunction is proper against Defendants and their co-conspirators, and all persons in active concert or participation with the foregoing, including but not limited to financial institutions, because Defendants fraudulently obtained funds from the Closing purporting to be acting on behalf of Plaintiff ARB. It serves the

public interest for the Court to allow discovery and recovery of fraudulently stolen funds.

13.

An injunction, including but not limited to a freeze on the BNYM Account and all of its proceeds, wherever located, since November 15, 2023, up to the amount of $450,000, is warranted and should be issued on a temporary and preliminary, then permanent, basis pursuant to Fed. R. Civ. P. 65. The injunction should restrain Defendants, all persons acting in concert with or in participation with any of Defendants, their officers, directors, agents, representatives, successors, assigns, any banks, savings and loan associations, credit card companies, credit card processing agencies, merchant acquiring banks, financial institutions, or other companies that engage in the processing or transferring of money and/or real or personal property, who receive actual notice of the Court's Order by personal service or otherwise from, without prior approval of the Court, transferring, disposing of, or secreting any money or proceeds of money from Defendants and any other assets of Defendant John Doe 1, from accounts associated with or utilized by any of the Defendants, or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendants, into or out of any accounts associated with or utilized by any of the Defendants, regardless of whether such accounts are located

in the United States or abroad, including but not limited to the BNYM Account. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir.1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed.Appx. 707, 709 (5th Cir.2007) (per curiam) (ruling that the district court was "authorized to preserve the status quo by entering a limited asset freeze" in a Lanham Act infringement case); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir.2013), *cert. denied*, 134 S.Ct. 2819 (2014) (preliminary asset freeze injunction "forbids others – who are not directly enjoined but who act 'in active concert or participation' with an enjoined party – from assisting in [its] violation," citing Fed.R.Civ.P. 65(d)); *Waffenschmidt v. MacKay*, 763 F.2d 711, 718–19 (5th Cir.1985) (holding that a domestic nonparty's knowing, intentional violation of an injunction is sufficient on its own to create specific personal jurisdiction to enforce the injunction against that party); *ClearOne Commc'ns, Inc., v. Bowers*, 651 F.3d 1200, 1215–16 (10th Cir.2011) (affirming that "a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order").

14.

In light of the complexity and the fraudulent nature of the scheme, notice to the accountholders or banks in advance of granting an injunction will prompt Defendants and their co-conspirators, and possibly banks, to further dispose of the stolen funds. (Lefkow Decl., Ex. 3.) Therefore, Plaintiffs seek this relief *ex parte*.

15.

Plaintiffs respectfully request that a bond be set at $4,500, which is 1/100th of the amount wired under false pretenses. In the unlikely event that the accountholder that received fraudulent proceeds will contest the relief sought in this case, it will have an opportunity to request that the Court to set a higher bond at the preliminary injunction hearing, and Plaintiffs' proposed Order provides that Plaintiffs shall promptly notify the Court of what funds are identified so that the Court can set a higher bond if the Court desires one.

## CONCLUSION

WHEREFORE, Plaintiffs pray that this Court grant Plaintiffs' Motion for a Temporary Restraining Order; enter a Temporary Restraining Order on the terms set forth in the proposed Order submitted herewith; set a hearing for a preliminary injunction hearing within 14 days of the entry of the TRO; enter a preliminary

9076156v.1

injunction through final judgment in this case or further Order of the Court; and grant such other and further relief as the Court deems just and proper.

The undersigned certifies pursuant to Local Rule 7.1(f) that this Memorandum complies with the limits in LR 7.1(f) and with the type-size limit of LR 7.1(h). This Memorandum contains 2455 words in proportional font pursuant to the Microsoft Word version 2402 word-count that was specifically applied to include all text, including headings, footnotes, and quotations.

Respectfully submitted this, the 22nd day of April, 2024.

                        GUSTAFSON GLUEK PLLC

By: /s/ Daniel J. Nordin
     Daniel E. Gustafson (#202241)
     Daniel J. Nordin (#392393)
     Mary M. Nikolai (#400354)
     **GUSTAFSON GLUEK PLLC**
     Canadian Pacific Plaza
     120 South Sixth Street, Suite 2600
     Minneapolis, MN 55402
     Telephone: (612) 333-8844
     dgustafson@gustafsongluek.com
     dnordin@gustafsongluek.com
     mnikolai@gustafsongluek.com

        Jason Gustafson (#0403297)
        THRONDSET MICHENFELDER, LLC
        Cornerstone Building
        One Central Avenue West, Suite 101
        St. Michael, MN 55376
        Telephone: (763) 515-6110
        jason@throndsetlaw.com

        ***Counsel for Auto-Rec Bodyworks, Inc. and HRE LLC***

        HELLMUTH & JOHNSON, PLLC

By:  <u>*/s/ J. Robert Keena*</u>
        J. Robert Keena, MN ID #258817
        8050 West 78th Street
        Edina, Minnesota 55439
        Telephone: 952-941-4005
        Email: jkeena@hjlawfirm.com
        *(Pro Hac Vice Application Pending)*

        ***Attorneys for Plaintiff***
        ***Hellmuth & Johnson, PLLC***

9076156v.1

COPELAND, STAIR, VALZ & LOVELL, LLP

By: <u>/s/Mark D. Lefkow</u>
Mark D. Lefkow
Georgia Bar No. 004289
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Phone: (404) 522-8220
Fax: (404) 523-2345
Email: mlefkow@csvl.law
*(Pro Hac Vice Application Pending)*

**Attorneys for Plaintiff**
**Hellmuth & Johnson, PLLC**

9076156v.1